### 10199

### BROOKER v. SILVERTHORNE.

#### (99 S. E. 350,)

1. APPEAL AND ERROR—REVIEW—VERDICT.—Verdict for plaintiff was conclusive as to truth of the facts alleged by her.

2. COURTS—RULES OF DECISIONS—CIRCUMSTANCES OF PARTICULAR CASE.— Every decision has tacit reference to the facts and circumstances of the case decided.

3. THREATS—CIVIL LIABILITY.—A threat of bodily injury to be actionable must produce fear in the mind of person against whom it is made, and must either be of such a nature and be made under such circumstances as to effect the mind of a person of ordinary reason and firmness, so as to influence his conduct, or must be made, with knowledge of person making it, against a person peculiarly susceptible to fear.

4. THREATS—ABUSIVE LANGUAGE—CIVIL ACTION.—Defendant's exclamations over the telephone to plaintiff exchange operator of, "You God damned woman! None of you attend to your business," and: "You are a God damned liar. If I were there, I would break your God damned neck"—putting plaintiff in great fear and making her nervous and unfit for duty, were not civilly actionable, if plaintiff was a person of ordinary reason and firmness, not being of such nature or made under such circumstances as to put person of ordinary reason and firmness in fear of injury.

5. EVIDENCE—PRESUMPTION — REASON AND FAIRNESS. — Telephone exchange operators, suing for damages for alleged threats made over telephone, will not be presumed not to be persons of ordinary reason and firmness.

6. THREATS — ABUSIVE LANGUAGE. — Exclamations over telephone to exchange operator of, "If I were there, I would break your God damned neck"—was not a "threat."

Before SEASE, J., Barnwell ——————————

Term——————————. Reversed.

Action by Mrs. Cora Brooker against A. E. Silverthorne, Judgment for plaintiff, and defendant appeals.

*Mr. J. O. Patterson, Jr.,* for appellant, submits: *No recovery for mental suffering is permissible except under the mental anguish statute:* 84 S. C. 15. *In this State damages cannot be recovered for mental anguish disconnected with, and in the absence of bodily injury:* 78 S. C. 552; 58 S. C. 582; Addison on Torts, section 1; Cooley on Torts, p. 3. *The distinction between the recent case of Lipman v. A. C. L. Ry. Company,* 108 S. C. 151, *and Cave v. R. R. Co.,* 94 S. C. 282, *and the one at bar is that in the Lipman case and the Cave case a contractual relation existed which entitled plaintiff to recover.*

*Messrs. A. H. Ninestein* and *Chas. Carroll Simms,* for respondent, submit: *There is no doubt about the general rule that mental anguish unaccompanied by physical injury cannot be the subject of a recovery, but there are exceptions to this general rule:* 108 S. C. 155; 57 S. C. 325; 35 S. E. 556; 62 S. C. 222; 40 S. E. 162; Am. St. Rep. 893. *Damages may be recovered where wilfulness and wantonness are alleged, without actual damages:* 8. R. C. L., pp. 75 and 76-78; 25 L. R. A. 976; 58 L. R. A. 397; 70 N. H. 271; 134 Mo. App. 146.

April 28, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from judgment for plaintiff for $2,000 damages for mental anguish and nervous shock alleged to have been caused by abusive and threatening language addressed to plaintiff by defendant over the telephone.

Plaintiff alleges: That on October 27, 1916, she was night operator at the telephone exchange at Barnwell. That defendant called the exchange over the telephone and asked for a certain connection, which she promptly tried to get for him, but, upon her failing to do so, he cursed and threatened her in an outrageous manner, saying to her; "You God damned woman! None of you attend to your business." That she tried to reason with him, telling him that she had done all that she could to get the connection he wanted, but he continued to abuse and threaten her, saying to her: "You are a God damned liar. If I were there, I would break your God damned neck." That the language and threat of defendant put her in great fear that he would come to the exchange and further insult her, and that she was so shocked and unnerved that she was made sick and unfit for duty, and had to take medicine to make her sleep.. That for weeks aftewards, when defendant's number would call, she would become so nervous that she could not answer the call. And that her nervous system was so shocked and wrecked that she suffered and continues to suffer in health, mind, and body on account of the abusive and threatening language addressed to her by defendant.

The Court overruled a demurrer to the complaint for insufficiency, and defendant answered by general denial. Plaintiff's testimony was in accord with the allegations of her complaint, and, at the close thereof, defendant moved for a nonsuit, which was refused.

(1) Although it cannot affect the decision, because the truth of the facts alleged is concluded by the verdict, it is nevertheless due to the defendant to say that he denied emphatically using the language attributed to him, and his denial was corroborated by the testimony of his wife and a

lineman of the telephone company. Defendant testified, also, that, on hearing that plaintiff was offended, he went to her and told her that he did not intend to say anything to offend her, and did not remember having done so, and asked her what he had said that offended her, and she replied that he had spoken a little harshly to her; that he told her he did not remember having done so, but, if she thought so, he was very sorry, and she seemed to be satisfied with this apology. This conversation was not denied by plaintiff.

The question is whether plaintiff stated or proved a cause of action. That question was decided in the negative in *Rankin v. Railroad Co.*, 58 S. C. 532, 36 S. E. 997. In that case, Mrs. Rankin alleged that the railroad company's agents trespassed upon her premises, and were about to cut down some trees of great value and beauty, and when she approached them and requested them not to do so, the foreman of the gang "cursed her and ordered her to get away from there, or he would put her in the penitentiary, and threatened to strike her, she being an old woman, and otherwise maltreated and abused her to her great damage." A demurrer to this complaint was sustained. The Court considered the complaint as having attempted to set forth two causes of action, one for trespass on the plaintiff's property and the other for the abusive and threatening language. After showing that no cause of action for trespass was stated, the question whether an action would lie for the abusive and threatening language was considered, and it was held that it would not. On appeal, this Court affirmed the judgment upon the reasoning of the Circuit Court, and said:

"No assault upon the plaintiff is alleged, and mere words, under the circumstances stated, would not be civilly actionable."

The Circuit Court rested its conclusions in part upon the following quotations from Cooley on Torts:

"An act or omission may be wrong in morals, or it may

be wrong in law. It is scarcely necessary to say that the
two things are not interchangeable. No government has
undertaken to give redress whenever an act was found to
be wrong, judged by the standard of strict morality; nor is
it likely that any government ever will." Cooley on Torts,
p. 3.

"A threat to commit an injury is also sometimes made
a criminal offense, but it is not actionable private wrong.
Many reasons may be assigned for distinguishing between
this case and that of an assault, one of them being that the
threat only promises a future injury, and usually gives ample
opportunity to provide against it, while an assault must be
resisted on the instant. But the principal reason, perhaps,
is found in the reluctance of the law to give a cause of action
for mere words. Words never constitute an assault, is a
time-honored maxim. Words may be thoughtlessly spoken;
they may be misunderstood; they may have indicated to the
person threatened nothing but momentary spleen or anger,
though when afterwards reported by witnesses they seem
to express deliberate malice and purpose to injure. Even
when defamation is complained of, the law is very care-
ful to require something more than expressions of anger,
reproach, or contempt, before it will interfere; justly con-
sidering that it is safer to allow too much liberty than to
interpose too much restraint. And comparing assaults and
threats, another important difference is to be noted: In the
case of threats, as has been stated, preventive remedies are
available; but against an assault there are usually none
beyond what the party assaulted has in his own power of
physical resistance." Cooley on Torts, p. 29.

The plaintiff in this case relies upon the case of *Cave v.
Ry.*, 94 S. C. 282, 77 S. E. 1017, L. R. A. 1915b, 915 Ann.
Cas. 1915a, 1065; and *Lipman v. R. Co.*, 108 S. C. 151, 93
S. E. 714, L. R. A. 1918a, 596, in which it was held
2, 3    that a carrier is liable in damages for abusive lan-
guage addressed to a passenger by the carrier's serv-

ants.   It was pointed out in those cases that the ground of
the carrier's liability for abusive language to a passenger is
exceptional, on account of the special and peculiar relations,
obligations, and duties existing between carrier and passen-
ger, which differ in kind and degree from almost every other
legal or contractual relation, since the carrier is in duty bound
to protect his passengers from assault or insult by his serv-
ants, and to afford them courteous and respectful treatment.
When the ground of liability is considered, the want of
analogy between those cases and this becomes apparent, for
the defendant in this case was under legal or contractual obli-
gation or duty to protect the plaintiff from insult, abusive
language, or assault.   Every decision has tacit reference
to the facts and circumstances of the case decided.   There-
fore, when it was said in the Rankin case that no action
would lie for mere threats or abusive words spoken, the
Court was careful to qualify the statement by confining it
to the circumstances stated; for, as we have seen, abusive
language addressed to a passenger by a carrier's servants
is actionable.   And it is not absolutely true that no action
will lie for threats.   Blackstone says that injury may be
committed "by threats and menaces of bodily hurt, through
fear of which a man's business is interrupted.   A menace
alone, without a consequent inconvenience, makes not the
injury, but to complete the wrong there must be both of
them together.   The remedy for this is in pecuniary dam-
ages, * * * this being inchoate, though not an absolute
violence."   3 Black. Com. 120.   But the threat which causes
the fear must be such as the law will recognize as adequate
to produce the result.   There must be just and reasonable
ground for the fear; hence a vain or idle threat is not suffi-
cient.   It must be of such nature and made under such cir-
cumstances as to affect the mind of a person of ordinary
reason and firmness, so as to influence his conduct; or it
must appear that the person against whom it is made was
peculiarly susceptible to fear, and that the person making

the threat knew and took advantage of the fact that he could not stand as much as an ordinary person. *Grimes v. Gates,* 47 Vt. 594, 19 Am. Rep. 129.

If it should be conceded that the language of defendant contained a threat, it was not of such nature or made under such circumstances as to put a person of ordinary reason and firmness in fear of bodily hurt. And it is not alleged that plaintiff was not a person of ordinary reason and firmness and that defendant knew it; and, in the absence of such allegation, it will not be presumed. A person of ordinary reason and firmness should have known that the profane and vulgar language alleged to have been used by defendant was the result of a momentary fit of passion, caused by his failure to get the connection he asked for, and that he had no intention of doing or attempting to do plaintiff any bodily hurt. But the words used did not amount to a threat. Defendant said: "If I were there, I would break your * * * neck." But he was not there, and plaintiff knew it; and there is nothing in what he said expressive of an intention to go there and injure plaintiff. Webster defines a "threat" as "the expression of an intention to inflict evil or injury on another." The law dictionaries give practically the same definition. A threat therefore looks to the future. As Judge Cooley says, in the passage above quoted, "a threat only promises a future injury." Here there was no expression of an intention to injure in the future, and therefore no threat.

The language attributed to defendant—especially when used by a man to a woman—merits severest condemnation and subjects the user to the scorn and contempt of his fellow men. But it is not civilly actionable. Diligent search has failed to discover any case or authority to the contrary, but many in support of the conclusion which we have reached.

Judgment reversed.